GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
By:     EMILY BRETZ
        Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. No. (212) 637-2777
Fax No. (212) 637-2702

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> AUGUSTIN D. ROSA d/b/a ROSA BUSINESS ADMINISTRATION, INC., <br><br> Defendant. | **COMPLAINT** <br><br> 20 Civ. 1193 |

Plaintiff the United States of America (the "United States") alleges as follows:

1.      The United States brings this action to seek a permanent injunction against tax preparer Augustin D. Rosa ("Rosa"), doing business as Rosa Business Administration, Inc. ("RBA"), who has engaged in a pattern of preparing and filing fraudulent tax returns on behalf of his clients in order to reduce their tax liability and generate refunds to which they are not entitled.

2.      Specifically, the United States seeks the entry of a permanent injunction against Rosa, either in his individual capacity or through RBA or any other individual or other entity: (i) pursuant to 26 U.S.C. § 7407, to bar him permanently from preparing federal tax returns and other related documents and forms on behalf of other taxpayers; (ii) pursuant to 26 U.S.C.

§ 7408, to bar him from engaging in any activity subject to penalty under 26 U.S.C. § 6701, and

(iii) pursuant to 26 U.S.C. § 7402, to bar him from engaging in conduct that substantially

interferes with the proper administration and enforcement of the internal revenue laws.

## Jurisdiction and Venue

3.      Pursuant to 26 U.S.C. §§ 7402, 7407 and 7408, this action has been commenced

at the direction of a delegate of the Attorney General of the United States based on a request by a

delegate of the Secretary of the Treasury.

4.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1340, and

1345 and 26 U.S.C. § 7402(a).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2)

because Rosa resides in this District and a substantial part of the actions giving rise to this suit

took place in this District, and pursuant to 26 U.S.C. § 7408(a) because Rosa has engaged in

specified conduct, which the United States is seeking to enjoin, in this District.

## The Parties

6.      Plaintiff brings this action on behalf of the Internal Revenue Service ("IRS"), an

agency of the federal government and a bureau of the U.S. Department of the Treasury.

7.      Rosa has been preparing tax returns professionally for at least 18 years.  In 2005,

Rosa opened RBA, a tax return preparation business in the Bronx, which charged customers fees

for preparing federal tax returns.   Rosa is the owner of and is doing business as RBA.

8.      Rosa prepares IRS Forms 1040, 1040A, 1040EZ (individual tax returns), 1120

(corporate tax returns) 1120S (tax returns for S corporations), 1065 (tax returns for partnerships),

940 (returns for certain employee payroll taxes), and 941 (returns for other types of employee

payroll taxes) for his clients.  He advertises his business through community flyers and word of mouth.

9.      In February 2017, the IRS began an examination of Rosa regarding his failure to file his personal tax returns, and the underreporting of his income from RBA, all for tax years 2014, 2015, 2016, and, later also 2017.  On May 22, 2018, the IRS began a separate examination of RBA for its failure to file corporate tax returns for tax years 2014-2017.  Rosa failed to respond to IRS Information Document Requests issued as part of both examinations, and failed to appear for meetings with an Internal Revenue Agent scheduled for May 8, 2018, and September 27, 2018.  On or about April 15, 2019, the Internal Revenue Agent handling the matter determined that Rosa had underreported his income for tax years 2014-2018.  As of December 12, 2019, Rosa owed the IRS $44,011.17 in assessed but unpaid taxes, penalties, and interest for his personal returns.  IRS also assessed Rosa $7,860 in penalties for RBA's failure to file timely corporate tax returns.[1]

## Rosa's Tax Fraud Scheme

10.      In June 2017, the IRS began a separate investigation into Rosa and RBA regarding whether Rosa regularly falsely reported inflated deductions for his clients on Schedule A to their individual federal tax returns, and whether he prepared returns for his clients that included false information on their Schedule C that would improperly qualify them for earned income tax credits ("EITC").  The EITC is a refundable tax credit for low- to moderate-income working individuals and couples, particularly those with children.  The amount of EITC benefit depends on a recipient's taxable income and number of children.

---

[1] Because RBA is an S corporation, its tax liabilities flow through to Rosa.

11.     Schedule A is used to claim certain itemized tax deductions, including those for medical and dental expenses, gifts to charity, job-related and other miscellaneous expenses (such as unreimbursed employee business expenses ("UBE"), including job-related clothing, shoes, training and education, public transportation, and meals), and state and local taxes paid. Schedule C is filed for taxpayers who operate sole proprietorship businesses to report those businesses' gross receipts, expenses, and profits or losses [2]

12.     Section 6695(g) of the Internal Revenue Code, 26 U.S.C. § 6695(g), requires that tax return preparers comply with certain due diligence requirements, and imposes a penalty for preparers who fail to do so.  These requirements are set forth in 26 C.F.R. § 1.6695-2(b), and include that: (1) the tax return preparer must complete and submit Form 8867, the "Paid Preparer's Due Diligence Checklist," which requires verification and substantiation for tax credits claimed on behalf of clients; and (2) when computing tax credits for clients, the tax return preparer must either complete the worksheet in the instructions to Form 1040, 1040A, 1040EZ, and/or 8863,[3] as appropriate, or otherwise document the computation of the credits claimed, including the method and information used to make the computations.

---

[2] Income reported on Schedule C is considered "earned income" that qualifies for the EITC if the net income less expenses reported falls within a certain range.  The most common Schedule C errors or abuse noted on EITC returns are: Schedule Cs with losses or overstated expenses to reduce taxpayers' income so they qualify for EITC; and bogus or inflated Schedule C income to qualify for or maximize the amount of EITC.  Depending on an individual's filing status, a somewhat higher income will increase the EITC credit available.  For example, in 2016, the maximum EITC available for a single taxpayer with two children was $5,572, which was available for taxpayers earning between $13,900 and $18,200.  *See* https://www.irs.gov/pub/irs-prior/p596--2016.pdf.  Taxpayers earning less than $13,900 would receive a lower EITC benefit.  Therefore, taxpayers earning less than $13,900 would benefit if they inflated their income so as to qualify for the maximum EITC credit.

[3] Form 8863 is used to claim education credits, and is attached to an individual's income tax return.

4

13.     During the course of its investigation, the IRS reviewed 36 tax returns Rosa had prepared for his clients in tax years 2012-2015.  It found that Rosa inflated his clients' UBE deductions in their Schedules A, falsely claiming an estimated total of $524,206 in such deductions on these returns.

14.     The IRS also reviewed 22 tax returns Rosa prepared for clients in tax years 2013-2016, which reported income and expenses on Schedule C relating to businesses including beauty and hair care, cleaning, and child care, which are known by the IRS to be used often on abusive tax returns.  The IRS found that none of these returns included a Form 1099-MISC or employer letter that would support the income claimed on the Schedule C, and none of the returns indicated any expenses relating to the reported income.[4]  The IRS also found that the expenses claimed on these schedules were not related to the reported source of income; for example, certain expenses claimed for an individual who worked in the "child care" field had nothing to do with the provision of child care.  The IRS found that there was no basis for Rosa to include such expenses on his clients' returns.  The IRS concluded that Rosa's inclusion of false or fraudulent items on his clients' Schedule Cs allowed the clients to receive unjustified EITC payments by either increasing or decreasing the clients' stated income to qualify for or maximize their EITC benefits.  The IRS estimated that these returns claimed an estimated total of more than $53,344 in fraudulent EITC credits.

15.     As part of its investigations, the IRS sent out letters and questionnaires to many of Rosa's clients regarding their 2015 and 2016 tax returns, and conducted interviews with some of

---

[4] Companies use Form 1099-MISC to report miscellaneous payments they make to nonemployees, such as independent contractors, during the calendar year.  The absence of a Form 1099-MISC, or a letter from the employer, means that IRS cannot verify that the taxpayer earned the income listed on Schedule C, and suggests that the stated income may not be accurate.

them.  Additionally, the IRS reviewed 81 of Rosa's client files for tax year 2015, and 69 of his

client files for tax year 2016.  From the interviews and files obtained from Rosa, the IRS

discovered various false statements made by Rosa on his clients' tax returns, including the

following:

### a.    Rosa's Preparation of J.R.R.'s Tax Returns[5]

16.    During the relevant time period, J.R.R. worked as a security guard, and had no

background in accounting or tax preparation.  He lived in the Bronx.

17.    Rosa prepared J.R.R.'s federal tax returns for tax years 2015 and 2016.

18.    The returns Rosa prepared for J.R.R. fraudulently asserted an unreimbursed

business expense deduction of $9,099 in 2015 and of $10,329 in 2016, even though J.R.R. did

not inform Rosa that he had any such expenses or provide Rosa with any receipts for them.

J.R.R. provided Rosa only with a Form W-2 from his employer and later confirmed to an

Internal Revenue Agent that he did not incur any UBE in 2015 or 2016.

19.    After Rosa caused the fraudulent returns to be filed, J.R.R. received tax refunds

for those years, which exceeded the refunds he might have received had accurate returns been

filed on his behalf.

### b.    Rosa's Preparation of I.E.'s Tax Returns

20.    For the relevant time period, I.E. worked as a child care provider and lived in

Manhattan.  She had no background in accounting or tax preparation.

21.    Rosa prepared a federal tax return on behalf of I.E. for tax year 2015.

22.    The return Rosa prepared for I.E. fraudulently asserted a UBE deduction of

$12,475, even though I.E. did not tell Rosa that she had any UBE expenses or provide Rosa with

---

[5] This complaint refers to certain of Rosa's clients by their initials to protect their privacy.

any receipts for such expenses.  She later indicated to an Internal Revenue Agent that she did not incur UBE in 2015.

23.     After Rosa caused the fraudulent return to be filed, I.E. received a refund of $12,457 for that year, which exceeded the refund she might have received had accurate returns been filed on her behalf.

            c.     **Rosa's Preparation of F.A.M.'s Tax Returns**

24.     During the relevant time period, F.A.M. worked as a janitor and lived in Brooklyn.  He had no background in accounting or tax preparation.

25.     Rosa prepared F.A.M.'s federal tax return for tax year 2015.

26.     The return prepared by Rosa for F.A.M fraudulently asserted a UBE deduction of $14,507, even though F.A.M. did not claim such expenses or provide Rosa with any receipts for them.  F.A.M. later told an Internal Revenue Agent that he was unaware that his 2015 tax return claimed a UBE deduction.

27.     After Rosa caused the fraudulent returns to be filed, F.A.M. received a tax refund for that year, which exceeded the refund he might have received had accurate returns been filed on his behalf.

            d.     **Rosa's Preparation of R.P.'s Tax Returns**

28.     During the relevant time period, R.P. was a dishwasher living in Manhattan.  He had no background in accounting or tax preparation.

29.     Rosa prepared federal tax returns for R.P. for tax years 2015 and 2016.

30.     The returns prepared by Rosa fraudulently claimed UBE deductions of $11,419 and $10,522, for 2015 and 2016 respectively, even though R.P. did not tell Rosa that he had any such expenses or provide Rosa with receipts for them.  R.P. later told an Internal Revenue Agent

that: "I did not tell the preparer to put any of these expenses.  I have no knowledge of these expenses.  The preparer just did my taxes and told me to sign."

31.     After Rosa caused the fraudulent 2015 and 2016 federal tax returns to be filed, R.P. received tax refunds from the IRS for those years, which exceeded the refunds he might have received had accurate returns been filed on his behalf.

        **e.      Rosa's Preparation of M.S.'s Tax Returns**

32.     During the relevant time period, M.S. was a bus driver living in Ozone Park, New York.  She had no background in accounting or tax preparation.

33.     Rosa prepared a federal tax return for M.S. for tax year 2015.

34.     The return prepared by Rosa for M.S. fraudulently asserted UBE of $14,865, even though M.S. indicated to an Internal Revenue Agent that she did not incur any UBE in 2015.

35.     After Rosa caused the fraudulent return to be filed, M.S. received a tax refund from the IRS for that year, which exceeded the refund she might have received had accurate returns been filed on his behalf.

        **f.      Rosa's Preparation of J.H.B's Tax Returns**

36.     During the relevant time period, J.H.B. was a legal secretary living in Manhattan who had no background in accounting or tax preparation.

37.     Rosa prepared a federal tax return for J.H.B. for tax year 2015.

38.     The return prepared by Rosa for J.H.B. fraudulently asserted UBE of $13,410. J.H.B. stated to an Internal Revenue Agent that she did not incur any UBE in 2015 and that Rosa did not review her return with her.

39.     After Rosa caused the fraudulent return to be filed, J.H.B. received a tax refund from the IRS for that year, which exceeded the refund she might have received had accurate returns been filed on his behalf.

g.     **Rosa's Preparation of D.R.'s Tax Returns**

40.     During the relevant time period, D.R. listed his occupation on his tax returns as "moving."  D.R. lived in the Bronx and had no background in accounting or tax preparation.

41.     Rosa prepared federal tax returns for D.R. for tax years 2015 and 2016.

42.     The returns prepared by Rosa for D.R. fraudulently asserted UBE of $14,148 and $19,027 for 2015 and 2016, respectively.  D.R. stated to an Internal Revenue Agent that he had incurred certain expenses relating to his job, but not nearly as much as what had been reported as UBE on his 2015 and 2016 returns.

h.     **Rosa's Preparation of J.A.'s Tax Return**

43.     During the relevant time period, J.A. worked in home health care and as a janitor. J.A. had no background in accounting or tax preparation.

44.     Rosa prepared a federal tax return for J.A. for tax year 2015.

45.     The return prepared by Rosa for J.A. included a Schedule C that showed $4,500 in fraudulent income and included an associated Form 1099; however, J.A. told an Internal Revenue Agent that she did not earn any such income or receive a Form 1099 during that year. The fraudulent income reported caused J.A. to get EITC of approximately $3,390.

46.     After Rosa caused the fraudulent returns to be filed, J.A. received a tax refund from the IRS, which exceeded the refund she might have received had accurate returns been filed on her behalf.

### i.    Rosa's Preparation of K.S.R.'s Tax Returns

47.     During the relevant time period, K.S.R. worked as a beautician helper.  K.S.R. had no background in accounting or tax preparation.

48.     Rosa prepared federal tax returns for K.S.R. for tax years 2015 and 2016.

49.     The returns prepared by Rosa for K.S.R. included a Schedule C for 2015 for "general cleaning" that showed $10,400 in fraudulent income and an associated Form 1099. However, K.S.R. told an Internal Revenue Agent that she had never earned over $10,000, and had not received a Form 1099 from her employer.  In 2016, Rosa prepared a return that included a Schedule C showing $2,000 in fraudulent income, but there was no corresponding Form 1099 from K.S.R's employer.

50.     After Rosa caused the fraudulent returns to be filed, K.S.R. received EITC tax credits from the IRS, which exceeded the credits she might have received had accurate returns been filed on her behalf.

### j.    Rosa's Preparation of M.G.'s Tax Returns

51.     During the relevant time period, M.G. worked as a bartender, a child care provider, and a hair dresser.  M.G. had no background in accounting or tax preparation.

52.     Rosa prepared a federal tax return for M.G. for tax year 2015.

53.     The return prepared by Rosa for M.G. claimed EITC of $5,210, but there was no supporting documentation or due diligence performed to show that M.G. was entitled to EITC.

54.     After Rosa caused the fraudulent returns to be filed, M.G. received an EITC payment from the IRS, which exceeded the payment she might have received had an accurate return been filed on her behalf.

* * * *

55.     Rosa personally prepared and filed the fraudulent federal tax returns on behalf of the clients described above, as he did for his many other clients throughout tax years 2014-2017.

56.     Rosa's clients were predominantly non-English speakers who had no training in accounting or tax preparation, and relied on Rosa to prepare accurate federal tax returns for them.  Although Rosa has claimed that his clients were aware of the contents of their returns, his clients were generally not aware that Rosa included false deductions in their returns.

57.     The IRS determined that from 2014 to at least 2017, Rosa regularly falsely reported fabricated deductions for his clients on Schedules A and C to IRS Form 1040. Specifically, Rosa orchestrated a tax fraud scheme through RBA through which he earned hundreds of thousands of dollars in fees for filing thousands of tax returns for his clients that claimed deductions based on false and fraudulent information.  Between 2014 and 2017, Rosa prepared and filed more than 3,100 tax returns on behalf of his clients.

58.     Among other fraudulent practices, Rosa regularly prepared false and fraudulent federal tax returns for his clients that overstated or wholly fabricated their UBE expenses on Schedule A; falsely claimed deductions for training and education on Schedule A; understated or overstated his clients' income, which generated or inflated EITC; or misrepresented the amount of children a client had, which generated improper additional child tax credits.

59.     Furthermore, when Rosa prepared his clients' tax returns, he had no basis, either in the form of documents or client statements, for claiming various deductions, and thus failed to comply with 26 U.S.C. § 6695(g).  When clients met with Rosa, they typically brought with them only basic documents, such as their Form W-2 (summarizing their salary), driver's license or other identification, and Social Security card.  These documents did not support the UBE,

EITC, or other credits or deductions he claimed on their behalf.  In addition, many clients did not have Forms 1099-MISC or letters from their employers to verify the Schedule C income.

60.     By including fabricated and inflated items on his clients' federal tax returns, Rosa caused his clients' tax liabilities to be reduced or caused them to receive tax refunds to which they were not lawfully entitled.

61.     Indeed, in 2011 and 2016, IRS assessed preparer penalties against Rosa for violations of 26 U.S.C. § 6695(g) due to his failure to comply with the requirements of 26 C.F.R. § 1.6695-2(b), for the 2009 and 2014 tax years.

### COUNT I: INJUNCTION UNDER 26 U.S.C. § 7407

62.     The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 57 above.

63.     26 U.S.C. § 7407 authorizes the Court to enjoin a tax return preparer if it finds that the return preparer has engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) and that injunctive relief is appropriate to prevent the recurrence of the conduct.  Section 6694(b) in turn imposes penalties on a tax return preparer who willfully attempts to understate the tax liability of another person or whose reckless or intentional disregard of rules and regulations results in the understatement of tax liability.

64.     26 U.S.C. § 7407 also authorizes injunctive relief where a tax return preparer "engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws."

65.     As set forth above, Rosa worked as an income tax return preparer as defined by the relevant provision, 26 U.S.C. § 7701(a)(36).

66.     As a tax return preparer, Rosa continually and repeatedly engaged in conduct that was subject to penalty under 26 U.S.C. § 6694(b) by preparing federal income tax returns for his clients that he knew contained false or fraudulent information and claimed false or fraudulent deductions.  Rosa also engaged in fraudulent or deceptive conduct that substantially interfered with the proper administration of the internal revenue laws.

67.     Specifically, Rosa continually and repeatedly prepared federal income tax returns for his clients knowing that they understated the tax they owed by, among other things, inflating their Schedule A deductions (including UBE expenses) and their Schedule C business expenses, and understating their income to claim EITC.

68.     Injunctive relief is necessary and appropriate to prevent the recurrence of misconduct by Rosa because, absent an injunction, he is likely to continue preparing and filing false federal tax returns.

69.     In the absence of an injunction, the United States will be put at risk of providing tax refunds to taxpayers who are not entitled to such refunds if Rosa prepares their tax returns, and the returns do not report and/or pay the correct amounts of federal taxes owed.  In that circumstance, the IRS would have to devote substantial time and resources to identifying and locating Rosa's customers and then examining their tax returns.  Pursuing all of Rosa's individual customers may be impossible given the IRS's limited resources.

70.     Pursuant to 26 U.S.C. § 7407, the Court should permanently enjoin Rosa from preparing or filing federal tax returns for others.

## COUNT II: INJUNCTION UNDER 26 U.S.C. § 7408

71.     The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 66 above.

72.     26 U.S.C. § 7408 authorizes the Court to enjoin any person from engaging in conduct that is subject to penalty under 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent the recurrence of that conduct.  Section 6701(a), in turn, penalizes any person who aids or assists in the preparation of any portion of a federal tax return or other document knowing that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it would result in an understatement of another person's tax liability.

73.     As set forth above, Rosa continually and repeatedly engaged in conduct that was subject to penalty under 26 U.S.C. § 6701 by preparing federal income tax returns for his clients knowing that the returns improperly claimed tax deductions and thereby illegally understated his clients' federal tax liabilities.

74.     Rosa's conduct is subject to penalty under 26 U.S.C. § 6701, but penalties alone will not deter him from reverting to such conduct.  Unless enjoined, Rosa is likely to continue to prepare federal tax returns that he knows or should know will result in the understatement of tax liability.

75.     In the absence of an injunction, the United States will be put at risk of providing tax refunds to taxpayers who are not entitled to such refunds if Rosa prepares their tax returns, and the returns do not report and/or pay the correct amounts of federal taxes owed.  In that circumstance, the IRS would have to devote substantial time and resources to identifying and locating Rosa's customers and then examining their tax returns.  Pursuing all of Rosa's individual customers may be impossible given the IRS's limited resources.

76.     Pursuant to 26 U.S.C. § 7408, the Court should permanently enjoin Rosa from engaging in conduct subject to penalty under 26 U.S.C. § 6701 and from preparing federal tax returns for others.

## COUNT III: INJUNCTION UNDER 26 U.S.C. § 7402

77.     The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 72 above.

78.     26 U.S.C. § 7402(a) authorizes the Court to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws," and further provides that such injunctive relief is "in addition to and not exclusive of any and all other remedies."

79.     As set forth above, Rosa repeatedly engaged in conduct that substantially interfered with the administration and enforcement of the internal revenue laws.  Further, unless enjoined from preparing tax returns for others, he is likely to engage in such conduct in the future.

80.     In light of Rosa's fraudulent and deceptive conduct, as well as the estimated losses to the IRS caused by his conduct, the United States will be exposed to the risk of irreparable injury if Rosa is not barred from preparing federal tax returns for others.

81.     Specifically, the United States will be put at risk of providing tax refunds to taxpayers who are not entitled to such refunds if Rosa prepares their tax returns, and the returns do not report and/or pay the correct amounts of federal taxes owed.  In that circumstance, the IRS would have to devote substantial time and resources to identifying and locating Rosa's customers and then examining their tax returns.  Pursuing all of Rosa's individual customers may be impossible given the IRS's limited resources.

82.     Enjoining Rosa from preparing federal tax returns for others is moreover in the public interest because an injunction will prevent the recurrence of illegal conduct and the harm such conduct will cause to the United States and the public.

83.     The Court should therefore enjoin Rosa under 26 U.S.C. § 7402(a), as set forth below in paragraph D.

*** 

WHEREFORE, the United States prays that the Court enter an order that:

A.     Finds that Rosa repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6701, and that injunctive relief pursuant to 26 U.S.C. §§ 7407 and 7408 is appropriate to prevent recurrence of such illegal conduct.

B.     Finds that Rosa engaged in fraudulent or deceptive conduct that substantially interfered with the proper administration of the internal revenue laws, and that injunctive relief pursuant to 26 U.S.C. § 7407 is appropriate for this additional reason.

C.     Finds that Rosa repeatedly engaged in conduct that interfered with the enforcement of the internal revenue laws and that injunctive relief against Rosa is appropriate to prevent recurrence of such conduct pursuant to 26 U.S.C. § 7402 and the Court's inherent authority.

D.     Enjoins Rosa, directly or indirectly, from:

1.     Preparing or filing, or assisting in preparing or filing, any federal tax return, amended return, or other federal tax document or form for any person other than himself or his spouse, if filing jointly;

2.     Representing any person before the IRS, or advising, assisting, counseling, or instructing anyone about preparing a federal tax return;

3.      Employing any person who prepares or files, or assists in preparing or filing, any federal tax return, amended return, or other federal tax document or form for any person other than himself or his spouse, if filing jointly;

4.      Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number or an Electronic Filing Identification Number;

5.      Having an ownership interest in an entity that is in the business of (i) preparing federal tax returns or other federal tax documents or forms for other persons or representing any person before the IRS, or (ii) advising, assisting, counseling, or instructing anyone about preparing a federal tax return;

6.      Engaging in any conduct that violates 26 U.S.C. §§ 6694 or 6701; and

7.      Engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

E.      Authorizes the United States to take such steps as necessary, including but not limited to post-judgment discovery, to monitor and ensure compliance with the Court's injunction against Rosa.

F.      Retains jurisdiction over Rosa and over this action to enforce any injunction entered against Rosa.

G.      Grants such further relief as the Court deems appropriate.

Dated: New York, New York
　　　　February 11, 2020

GEOFFREY S. BERMAN
United States Attorney of the
Southern District of New York

By:　　　 /s/ *Emily Bretz*
EMILY BRETZ
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: 212-637-2777
Email: emily.bretz@usdoj.gov